## O. G. PHILLIPS v. STATE.

No. A.-7704.   Opinion Filed March 14, 1931.
(296 Pac. 996.)

Tom Finney, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, hereinafter referred to as the defendant, was convicted of the crime of murder, and his punishment fixed at life in the state penitentiary, from which judgment and sentence the defendant has appealed.

The state, in order to sustain the allegations in the information, introduced the following testimony in substance:

J. C. Settles stated:

"I live 7½ miles south of Idabel; I knew Willie Young in his lifetime; I knew the defendant; I knew when Willie Young was killed in March, 1924; Willie Young was killed at the Butler-Jones Store, at Boss, Okla.; this store is known as the Claibourn Butler Store; I was working in the store, and had been to dinner and came back to the store; Willie Young bought some coal oil and tobacco; Willie

Young was on the north side of the store and Phillips on the south side when the shooting started; there were two doors on the west side and one on the east side of the building; Young was not in the store when I left to eat my dinner; when the shooting started, Young was sitting on a box on the north side smoking; I had been in the store four or five minutes when the shooting started; when I returned to the store the defendant was leaning against a counter near the southwest door, about six feet from Young; no words passed between Phillips and Young that I heard; as I passed between the parties I saw Phillips; he did not do anything as I passed; immediately after I passed between them the firing began; I did not look around when it started; when I did look around I saw Phillips almost between me and Young, going around back of the stove, had his gun pointed at Young; Young was in the act of getting up, with his hands to his bosom; I ran out of the store, when the firing ceased I came back and met Phillips on his way out; I don't know how many shots were fired they were fired so rapidly; I left the building by the northwest door and returned by the same door; as I returned, I met Luther Jones and George Galbert; when I got back Young was lying on his face against the southwest door; I saw three wounds on the body, one being on the lower part of the breast, one on the left side of the nose between the eyes, and one near the left ear. I did not see the defendant, Phillips, any more until he was brought down for the preliminary examination."

On cross-examination, the witness testified that the defendant Phillips was working for Claibourn Butler, and had his room at the Butler house, which was between 50 and 75 yards from the store; there was nothing said by either of the parties before the shooting—"The shooting commenced almost at the time I passed between the parties; when I looked around, Young's hands was to his bosom; he was in the act of getting up. I left before the firing ceased."

Luther Jones testified, in substance:

"I was in the store the time Willie Young was killed; had been there about 15 minutes; when I reached there Willie Young was there; I had not been there very long until Phillips came in; I heard no conversation between the parties when the shooting commenced; Willie Young was sitting on a keg when the first shot was fired; just before the first shot was fired the defendant, Phillips, was behind the heater; Settles passed me and picked up a box and walked between Phillips and Young; the shooting began; I could see both Phillips and Young; I did not see Phillips pull his gun, but I saw it when it was up; Young was not doing anything at the time, just sitting on a keg."

On cross-examination, witness testified, in substance, to the same facts as on direct examination.

George Galbert, called as a witness on behalf of the state, testified, in substance, the same as Luther Jones.

The defendant in his own behalf stated:

"I am 28 years old; I was raised near Foreman, Ark.; I made a crop with Cliff Ball in 1923; before it was out I left and went to Texas; I have been in Henryetta Langston's company; I returned from Texas about cotton picking time and picked cotton with Cliff Ball; I was acquainted with Willie Young; when I returned from Texas I had a conversation with Willie Young about Henryetta Langston; Willie Young asked me if I had quit Henryetta and I told him I had; he said he was glad of it, that he did not want to go out with a woman some one else was going with; I heard Young and Henryetta was going together; Henryetta was Ode Stewart's sister-in-law, and was staying there at Ode's place; Willie Young lived on Ode's place; about a week prior to the killing I saw Henryetta on the Fish Lake; I went to where she was and stayed there about 25 minutes; the following Sunday I passed by Willie Young's place, and Young stopped me and asked me where I was going, and I told him; he said, 'No, you are not, you are going to Odes and lay around with Henry-

etta,' and I said ,'No;' he said, 'I heard you had been lying around on the lake with Henryetta; Young said, 'If I find out you have I am going to kill you;' I saw he was mad, and I rushed away; I turned and waded the lake and home home; I next saw him down where I was plowing the following Monday, in the bushes; I did not have any talk with him; I went to work in the field that afternoon and took my pistol with me to protect myself; this trouble took place on the 13th of March, 1924; I had my dinner and went to the store to get a box of snuff; I saw Mr. Settles when he went into the store; when I went in I spoke to the congregation, and they all spoke but Willie; when Mr. Settles walked between us, Willie Young raised up like he was getting something out of his overalls, and I commenced shooting; about the time I started shooting, Young jumped up in a stooping position, going into his overalls; when Young got up he was coming toward me, and the shooting was done all at once; Young fell at the southwest door; I went around him and went out; I ran off and went to Texas, and came back to Oklahoma to give up; after I returned, I got scared and went to Arkansas."

On cross-examination, he admitted he told the officers that were bringing him back from Arkansas that he had not been back to Oklahoma since he killed Young.

Henry McCullough, called as a witness for the defendant, testified:

"I saw some one pass around the Lake near my place; in about a half an hour Willie Young passed and asked how long it had been since O. G. Phillips passed, and I said that I did not know whether he had passed or not; he stopped by the fence a while and went away; he did not act like he was mad."

Lela McCullough testified for the defendant that on Sunday before Young was killed she saw some one pass their place and later on Willie Young passed through the yard; "I did not understand what he said."

J. R. Jones, testifying on behalf of the defendant, stated:

"I went down to the store where the killing took place; I turned the body of Willie Young over and found a thirty-two automatic pistol; the best I remember it was either in the front pocket or the hip pocket; I rather believe it was about the hip pocket; I just saw the back part of the handle; there were two or three negroes there and I got the gun."

The undersheriff, S. R. Bryant, testified to being present and finding an automatic pistol on the body of the deceased; "I think it was in the hip pocket." Several other witnesses testify to being present at the store and seeing an automatic pistol taken off the person of the deceased. This is in substance the testimony.

Several errors are assigned by the defendant as grounds for a reversal of this case. The only error necessary to be considered is assignment No. 1, that the court erred in overruling motion for a new trial filed by plaintiff in error. The testimony in this case is slightly conflicting. The testimony of the state all tends to show that the defendant shot the deceased while the deceased was sitting on a keg, and that no words passed between them so far as any of the witnesses knew.

The only conflict in the testimony is in the defendant's testimony wherein the defendant states he thought the deceased had gone to his bosom for the purpose of drawing a pistol to shoot him at the time he fired the shot.

The testimony shows that after the shooting was over there was found on the body of the deceased an automatic pistol. Under the testimony in this case, the jury had an opportunity to consider its weight and the credibility of the witnesses; their interest or lack of interest in testify-

ing; their means of knowledge and demeanor on the witness stand; and, after considering all of these facts, they found the defendant guilty of murder and assessed his punishment at life imprisonment.

The evidence is sufficient to sustain the judgment. After an examination of the instructions we hold they correctly stated the law as applied to the facts in the case. No fundamental or prejudicial errors appear in the record.

The judgment is affirmed.

CHAPPELL and EDWARDS, JJ., concur.